UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **EDWIN EMANUEL BONNETTE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1606** |
| **TIMOTHY SOIGNET, ET AL.** | **SECTION: "H"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, Edwin Emanuel Bonnette, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983. Suing Sheriff Timothy Soignet and Warden Rhonda Ledet, plaintiff claimed that his constitutional rights were violated at the Terrebonne Parish Criminal Justice Complex ("TPCJC") when he was not admitted to a program providing treatment to inmates with Hepatitis C.

The defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure,[1] which plaintiff opposed.[2] For the following reasons, the motion should be **GRANTED**.

### Summary Judgment Standards

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[1] Rec. Doc. 10.
[2] Rec. Doc. 14.

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted); accord Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

### Plaintiff's Allegations

In his complaint, plaintiff stated his claims as follows:

> As a trustee at said jail, Warden Ledet pulled all trustees and had them tested for HIV and Hepatitis C to be treated for. I tested positive for Hepatitis C and was not treated, whereas other trustees with Hep C was treated. This occurred in Oct of 2020. Sheriff Timothy is involved because Warden Ledet is employed by the Sheriff's Office.[3]

---

[3] Rec. Doc. 1, p. 4.

**Defendants' Motion**

In their motion, the defendants argued that they could not be held liable with respect to the foregoing claim because: (1) plaintiff's claim was based on the fact that he was not provided with treatment for Hepatitis C through a program operated by the Start Corporation; (2) the Start Corporation was an entity over which the defendants exercised no control; and (3) the defendants were in no way involved in the Start Corporation's decision not to admit plaintiff to its program.

In support of their motion, the defendants offered sworn affidavits executed by Warden Ledet, Sheriff Soignet, Brook-Ashlee Bonvillian (a Nurse Practitioner/Supervisor employed by the Start Corporation), and Richard Neal (the Medical Administrator of the TPCJC).

In her affidavit, Warden Ledet stated:

> I am presently employed by the Terrebonne Parish Sheriff's Office as the Warden for the Terrebonne Parish Criminal Justice Complex (hereinafter "TPCJC"). My duties include overall supervision for all employees at the complex as well as the care, custody and control of the inmates housed at the complex, with the exception of the medical staff and their care for inmates in the TPCJC. The medical care for the inmates is provided by a medical staff with offices at the TPCJC, including a Medical Administrator, Doctors, and Nurses who regularly see the inmates for their medical needs and complaints. The entire medical staff are employees of and/or under contract with, the Terrebonne Parish Consolidated Government. Neither my staff or myself have access to the medical records of the inmates in the TPCJC and/or their care and treatment; and, my only oversight of the medical staff, is in matters of security for the facility.
> In late October and/or early November of 2020, our complex, through me, began dialog [with] the Start Corporation, a community based 501(c)(3) non-profit, with offices in Houma, Louisiana. The organization among other things has medical programs for the disenfranchised, free of charge, rendered by their system of physicians, nurse practitioners, and licensed social workers. Eligible participants in some of their programs, including medical programs, would include inmates in various prison facilities such as the TPCJC.
> One of those programs involved treatment for individuals who have Hepatitis C. Only Trustees were allowed to participate per request of the Start Corporation. This program provided special treatment [to] those individuals whose blood tests indicated that they had Hepatitis C and with the requirement that such individual had never been treated for same. Such a requirement was set forth by a Grant's requirements to the Start Corporation and which neither I nor Sheriff Tim Soignet had anything to do with.

> Plaintiff/Inmate Bonnette requested entrance into the special program, was allowed to be tested to determine eligibility, and failed to gain entrance to the program as he did not meet the program's requirements from the Start Corporation.
> Again, the fact that Plaintiff/Inmate Bonnette failed to get into the program was due to his failed entrance requirements from the Start Corporation, entrance requirements that neither myself nor Sheriff Tim Soignet set or determined. Nor, did either myself or Sheriff Soignet ever direct entrance to the program for a certain inmate, and/or denial for same.[4]

In his affidavit, Sheriff Soignet stated in pertinent part:

> In late October or early November of 2020, I was advised by Warden Ledet of a medical program made available to a certain classification of inmates such as trustees, and who were positive for Hepatitis C.
> The program was to be solely administered by the Start Corporation's medical division who had specific medical guidelines as to who was and was not eligible for the program. Neither myself nor Warden Ledet ever requested to the Start Corporation to place an inmate in the program or to keep an inmate out of the program as the Start Corporation had specifically specified all guidelines for eligibility into the program.[5]

In her affidavit, Ms. Bonvillian stated:

> I am a Nurse Practitioner/Supervisor employed by the Start Corporation, a 501(c)(3), which is located in Houma, Louisiana. The Start Corporation among other programs has a medical program for the disenfranchised, free of charge, rendered by their system of physicians, nurses, and licensed social workers. Eligible participants in some of their programs, including medical programs, would include inmates in various prison facilities such as the Terrebonne Parish Criminal Justice Complex (hereinafter "TPCJC").
> In late October and/or early November of 2020, I advised Warden Rhonda Ledet at the TPCJC of a medical program made available to a certain security classification of inmates such as trustees, who tested positive for Hepatitis C, and who previously had not received any medication/treatment for said Hepatitis C.
> The program was to be solely administered by the Start Corporation's medical division which had specific medical and grant guidelines as to who was and was not eligible for the program.
> Inmate Edwin Emanuel Bonnette (hereinafter "Inmate Bonnette") was an inmate at the TPCJC who was advised of the program and its eligibility requirements by Start Corporation employees, and then tested for same. However, while inmate Bonnette tested positive for Hepatitis C, he acknowledged that he had previously received treatment for same, thus making him ineligible for the special treatment under the program's guidelines.

---

[4] Rec. Doc. 10-3.
[5] Rec. Doc. 10-4.

Neither Warden Rhonda Ledet and/or Sheriff Timothy Soignet had any say regarding the eligibility of Trustee inmates into the Start Corporation program, except to make Trustee inmates available for interviews for the program, nor did either of them ever advise Start Corporation employees administrating the program, that they wanted or did not want inmate Bonnette's participation in the program.[6]

In his affidavit, Mr. Neal stated:

I am employed by the Terrebonne Parish Consolidated Government as the Medical Administrator for the Terrebonne Parish Criminal Justice Complex (hereinafter "TPCJC"). My responsibilities include overall supervision for the health care of all inmates housed in said facility. I am tasked with the responsibility to help develop, recommend and implement Health Care Policies and Procedures for the facility to ensure that the health of all inmates is provided for, and that inmates receive all constitutional guarantees that they are entitled to within the law as same relates to their health care.

Sometime in late October or early November of 2020 I was advised by Warden Rhonda Ledet of a program offered by the Start Corporation with a special treatment for inmates with Hepatitis C. Once I learned more about the program and that an outside medical staff/agency, the Start Corporation would handle the program when they visited inmates in the TPCJC, I had no objection to the program.

Neither myself nor any member of my Medical Staff at the TPCJC, participated with any type assistance for the program, direction of the program, and the rules as to who may participate in the program. Such rules and guidelines were developed and followed by Start Corporation's own employees pursuant to their Grant for same.

As the Medical Administrator I have access to every inmate's medical history and medical needs. I am aware that the Plaintiff/Inmate in this suit, Edwin Emanuel Bonnette (hereinafter "Inmate Bonnette"), states in his pleadings that he had Hepatitis C while incarcerated at the TPCJC and that he was denied treatment for it. I will state that Inmate Bonnette, as alleged by him, did in fact have Hepatitis C while incarcerated at the TPCJC, and so advised the medical staff upon his initial incarceration into the TPCJC.

He was monitored while incarcerated for Hepatitis C as needed. At no time was Inmate Bonnette denied medical care of any type, much less monitoring for Hepatitis C, when needed, by either myself or my staff. In fact, he, Inmate Bonnette, was sent several times by the medical staff during his incarceration in the TPCJC, to Leonard Chabert Medical Center, the TPCJC's support hospital facility, related to tests for his Hepatitis C.[7]

In his opposition to the defendants' motion, plaintiff argued: (1) the defendants had a duty under the law to provide medical services to inmates with life-threatening conditions; (2) he was

---

[6] Rec. Doc. 10-6.
[7] Rec. Doc. 10-5.

under the impression that he would receive treatment through the Start Corporation's program once it was established that he had Hepatitis C; (3) Sheriff Soignet was responsible for Warden Ledet and accountable for her actions because he was her employer; (4) Neal was not named as a defendant in this lawsuit and, in any event, his affidavit was false in stating that plaintiff was sent to the hospital for Hepatitis C, in that the three times he was sent to the hospital all concerned other medical problems; and (5) Ms. Bonvillian's statement that plaintiff said he had previously been treated for Hepatitis C was false, because he had said only that he had tested positive for (not that he was treated for) the disease, and, therefore, he should have been admitted to the program.

In this lawsuit, plaintiff sued only Sheriff Soignet and Warden Ledet regarding this claim concerning his medical care. But the defendants have submitted unrebutted evidence establishing that they were not personally involved in any decisions regarding that medical care. That poses an insurmountable obstacle for plaintiff because, indisputably, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Because Sheriff Soignet and Warden Ledet were not personally involved in the events on which plaintiff's claims are based, they cannot be held liable on plaintiff's claim regardless of how it is construed.

If plaintiff's claim is construed solely as one challenging the fact that he was denied participation in the Start Corporation's Hepatitis C treatment program, the defendants have provided unrebutted evidence establishing that (1) the Start Corporation was an entity separate and apart from the Terrebonne Parish Sheriff's Office and (2) neither Sheriff Soignet nor Warden Ledet exercised any influence over which jail inmates were admitted to or excluded from the Start Corporation's program.

Further, even if plaintiff's claim were construed more broadly as one alleging that he was not provided with **any** medical care for Hepatitis C at the TPCJC, Sheriff Soignet and Warden Ledet still would not be proper defendants for the following reasons.

Although the **Terrebonne Parish Sheriff's Office** ("TPSO") operates the TPCJC, it does not operate the medical unit serving the inmates. Rather, the defendants' unrebutted evidence establishes that medical care for TPCJC inmates is provided by the **Terrebonne Parish Consolidated Government** ("TPCG") through its own employees and independent contractors,[8] and that fact has previously been recognized in the jurisprudence. See, e.g., Victoria W. v. Larpenter, 205 F. Supp. 2d 580, 586 n.17 (E.D. La. 2002) ("The Sheriff does not receive funding from the parish for medical care of the inmates and the Sheriff is not responsible for the medical care of inmates. See La. R.S. 15:705. Responsibility for inmate medical care comes under the purview of the governing authority, the Parish (TPCG) …."), aff'd, 369 F.3d 475 (5th Cir. 2004).

The TPSO, of which Sheriff Soignet and Warden Ledet are a part, is a governmental entity separate and apart from the TPCG. See id. at 586 n.16 ("[T]he Sheriff is an autonomous local government official separate and apart from the parish he serves."). Because the TPSO does not provide inmate medical care either directly or indirectly, Sheriff Soignet and Warden Ledet cannot be held liable for any alleged deficiencies with respect to that medical care. See, e.g., Coler v. Davis, Civ. Action No. 14-0008, 2015 WL 1322858, at *2 (E.D. La. Mar. 24, 2015) (holding that medical claims against sheriff's office employees had no basis in law or fact and must be dismissed because the jail's medical care was provided by a separate entity pursuant to contract with the parish government, not by the sheriff's office staff).

---

[8] Rec. Doc. 10-3, p. 1 ("The medical care for the inmates is provided by a medical staff with offices at the TPCJC, including a Medical Administrator, Doctors, and Nurses who regularly see the inmates for their medical needs and complaints. The entire medical staff are employees of and/or under contract with, the Terrebonne Parish Consolidated Government.").

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the defendants' motion for summary judgment be **GRANTED** and that plaintiff's claims be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __21st__ day of April, 2022.

**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**